UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-21500-CIV-DIMITROULEAS

LEYLA HAMCHOU ABOU HARB,

Plaintiff,

vs.

U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. CITIZENSHIP AND IMMIGRATKION SERVICES
Secretary Kristi Noem
Acting Director Kika Scott,
Director Varsenik Papazian,

Defendants.
____________________________________/

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS CAUSE is before the Court on Defendants' Motion to Dismiss [DE 31], filed herein on May 27, 2026. The Court has carefully considered the Motion [DE 31], the Response [DE 36], and the Reply [DE 37], and is otherwise fully advised in the premises. For the reasons explained herein, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiff filed a Complaint in this case on April 1, 2025 and, following the entry of a joint stay and the eventual lifting thereof, Plaintiff filed an Amended Complaint, the operative pleading, on May 13, 2026. *See* [DE's 1, 10, 21, 28]. This case arises from Plaintiff's claim that USCIS failed to timely adjudicate her Application for Asylum and for Withholding of Removal (Form I-589), which has been pending since June 21, 2019. *See generally* [DE 28]. The

Amended Complaint alleges claims for Count I, violation of the Administrative Procedure Act; and Count II, Mandamus Act. *See* [DE 28]. The allegations according to the Amended Complaint are as follows:

Plaintiff Leyla Hamchou Abou Harb ("Plaintiff") filed an application for asylum protection with the U.S. Citizenship and Immigration Services ("USCIS") on June 21, 2019. [DE 28] at ¶ 1. USCIS confirmed receipt of Plaintiff's asylum application on June 21, 2019. ¶ 13. Plaintiff currently resides in the state of Florida. ¶ 7. Plaintiff is not in removal proceedings. ¶ 7. As of the May 13, 2026 filing of the Amended Complaint, over 6 years have passed since Plaintiff applied for asylum, yet USCIS has not adjudicated Plaintiff's asylum claim. ¶¶ 1, 15. USCIS has not even scheduled Plaintiff an asylum interview. ¶ 15. Plaintiff contacted Defendants to request that Plaintiff's case be adjudicated as soon as possible. ¶ 16. Defendants unequivocally refused to do so. ¶ 16.

Defendants currently schedule asylum interviews on a last in, first out basis ("LIFO"). ¶ 17. Defendants operate LIFO under two tracks. ¶ 17. Under Track 1, Defendants schedule asylum interviews based on three priorities: (1) applications that were scheduled for an interview, but the interview was rescheduled; (2) applications that have been pending 21 days or less; and (3) all other pending asylum applications starting with newer filings and working backward to older filings. ¶ 18. Plaintiff falls into this third category under Track 1. ¶ 18. Under Track 2, Defendants claim that a limited number of asylum officers also adjudicate some applications from the back to the front, meaning starting from the oldest applications and moving towards the newer ones. ¶ 19. This contrasts with Track 1, in which Defendants review backlogged cases from front to back, meaning newer cases first. ¶ 19.

Under the LIFO policy, the backlog of affirmative asylum applications waiting adjudication has grown every year since at least 2012. ¶ 20. There are now over 1,000,000 pending affirmative asylum applications nationwide. ¶ 20. Upon information and belief, there are at least 175,000 applications currently prioritized in front of Plaintiff under Track 1. ¶ 21. Furthermore, upon information and belief, there are at least 25,000 applications prioritized in front of Plaintiff under Track 2. ¶ 21. Thus, Plaintiff sits behind a roughly 200,000 case backlog, even accounting for backlogged cases that Defendants completed in 2025-2026 on administrative grounds, meaning the case was not decided on the merits. ¶ 22. Plaintiff's case is not subject to administrative closure and must be decided on the merits. ¶ 22.

Plaintiff alleges therefore that Defendants have abdicated their mandatory duty to adjudicate Plaintiff's application within a reasonable time because they will never reach Plaintiff's application through 200,000 prioritized applications under either Track 1 or Track 2. ¶ 23. Defendants will never reach Plaintiff under Track 1, which reviews backlogged cases starting with newer filings and working back towards older filings, because the number of asylum applications received exceeds the number of merit determinations on a yearly basis. ¶ 24. Because Defendants review all newer applications first under Track 1, the fact that Defendants receive more applications than they complete on an annual basis means that the line continuously grows in front of Plaintiff in the Track 1 backlog. ¶ 24. Upon information and belief, the AO completed around 6,000 cases on the merits in 2025 and is set to meet a similar pace in 2026. ¶ 25. The AO, however, received at least 35,000 new applications during that period. ¶ 25. The line in front of Plaintiff grew by around 29,000 applications, despite those applications having been pending over five years less than Plaintiff's application. ¶ 25. In fact, the Track 1 backlog in front of Plaintiff has grown in a similar manner every year since Plaintiff filed for asylum, and

continues to do. ¶ 25. In other words, under Track 1, the longer Plaintiff waits, the longer the wait becomes. ¶ 25. Thus, Defendants will mathematically never reach Plaintiff's application under Track 1. ¶ 26. Defendants will also never reach Plaintiff under Track 2, under which USCIS assigns some of its officers to reviewing to complete affirmative asylum applications pending in the backlog, starting with the oldest applications and moving forward, which Defendants claims allows some of the oldest pending applications to be completed in chronological order. ¶ 27. In practice, however, the resources that Defendants dedicate to Track 2 review are so de minimus as to be effectively ineffective. ¶ 27. So de minimus, in fact, that up information and belief Defendants would not reach Plaintiff through the 35,000 case Track 2 backlog within Plaintiff's natural life. ¶ 27.

Defendants' inaction in adjudicating Plaintiff's asylum claim has caused Plaintiff irreparable harm, hindering Plaintiff's ability to secure stable immigration status and the benefits that come with it. ¶ 28. Plaintiff cannot obtain lawful permanent resident status for at least one year after being granted asylum, and then must wait for four years after becoming a permanent resident to be eligible to apply to naturalize as a U.S. citizen and receive all the benefits thereof. ¶ 28. The result is that Plaintiff is unable to plan for the future or find peace of mind. ¶ 28.

Based on the foregoing, the Amended Complaint alleges two counts: Count I, violation of the Administrative Procedure Act; and Count II, Mandamus Act. *See* [DE 28]. Plaintiff seeks an order from the Court compelling USCIS to conduct an interview and adjudicate her application within thirty (30) days of the date of an order from the Court. *See id.* at p. 9.

Defendants move to dismiss for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The Court agrees Plaintiff's claims are subject to dismissal.

## II. STANDARD OF LAW

Under Rule 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms": facial and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990) (per curiam). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion, meaning that the court must consider the allegations of the complaint to be true." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1179 (S.D. Fla. 2012). "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). The burden is on the party seeking to invoke the Court's jurisdiction to establish that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, (1994). If the Court determines that it lacks subject matter jurisdiction, it must dismiss the claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley*, 355 U.S. at 41). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero*, 963 F. 2d 332, 334–36 (11th Cir. 1992) (citing *Robertson v. Johnston*, 376 F. 2d 43 (5th Cir. 1967)).

Nevertheless, the Court need not take allegations as true if they are merely "threadbare recitals of a cause of *action's* elements, supported by mere conclusory statements . . ." *Iqbal*, 556 U.S. at 663. In sum, "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at n. 8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984)).

## III. DISCUSSION

### A. Mandamus Act (Count II)

"A district court may issue a writ of mandamus to compel a government agency to perform a duty pursuant to the Mandamus Act." *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1284 (S.D. Fla. 2023); *see also* 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). A writ of mandamus "is an extraordinary remedy available only in the clearest and most compelling of cases." *Alfassi v. Garland*, 614 F. Supp. 3d 1252, 1255 (S.D. Fla. 2022) (citing *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 392 (2004) (Stevens, J., concurring)).

In the Eleventh Circuit, a district court may exercise jurisdiction over a mandamus action "only if (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Hakki v. Secretary*, 7 F.4th 1012, 1036 (11th Cir. 2021) (internal quotations and citations omitted). "The mandamus remedy was normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act about which [an official] had no discretion whatever." *Norton v. S. Utah Wilderness*

*All.*, 542 U.S. 55, 63 (2004) (cleaned up). "The party seeking mandamus has the burden of demonstrating that his right to the writ is clear and indisputable." *Serrano v. United States AG*, 655 F.3d 1260, 1263–64 (11th Cir. 2011) (citation omitted).

Defendants argue that Plaintiff's Mandamus Act claim should be dismissed on the grounds that the Court lacks jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(ii) to provide mandamus relief because Defendants have discretion to determine the pace of asylum adjudication, as Defendants have no duty to adjudicate asylum claims within a specific timeframe. Upon review, Plaintiff has not demonstrated a clear right to the relief requested—that USCIS adjudicate her I-589 petition within thirty (30) days of this Court's order, as Plaintiff has not pointed to any legal authority that establishes a clear right to a prescribed timeframe within which USCIS has a duty to process or adjudicate petitions. Additionally, the Eleventh Circuit has made clear that there is no mandamus jurisdiction when a plaintiff has sued under the APA, as the plaintiff cannot demonstrate the requirement that he lacks an adequate alternative remedy for obtaining relief. *See Serrano v. U.S. Atty. Gen.*, 655 F.3d 1260, 1264 (11th Cir. 2011) (affirming dismissal of mandamus claim where plaintiff sued under the APA); *see also Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 (11th Cir. 2011) ("The availability of relief under the [APA] . . . forecloses a grant of a writ of mandamus."). Accordingly, a plaintiff is foreclosed from seeking mandamus relief for unreasonable delay in processing their application when an adequate alternative remedy is available under the APA. *See, e.g., Ignatova v. Jaddou,* No. 0:22-CV-62103, 2023 WL 5611902, at *5 (S.D. Fla. Aug. 15, 2023), *report and recommendation adopted*, No. 22-62103-CIV, 2023 WL 5608433 (S.D. Fla. Aug. 30, 2023); *Osechas Lopez*, 649 F. Supp. 3d at 1286.

Based on the foregoing, the Court grants Defendants' motion to dismiss as to the Mandamus Act claim and dismisses that claim without prejudice for lack of subject matter jurisdiction.

B. APA (Count I)

The INA grants Plaintiff the right to apply for asylum. *See* 8 U.S.C. § 1158(a)(1). Federal courts and federal regulations implementing the asylum provisions impose a non-discretionary duty on Defendants to adjudicate asylum applications. *See* 8 C.F.R. § 208.9(a) ("USCIS shall adjudicate the claim of each asylum applicant whose application is complete…").

The, in turn, APA authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" includes "failure to act." 5 U.S.C. § 551(13). The APA requires agencies to conclude matters "within a reasonable time," and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Where an agency unlawfully fails to take a non-discretionary action, the APA provides that "[t]he reviewing court shall . . . compel agency action withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1) (emphasis added).

Accordingly, Plaintiff attempts to allege a claim under the APA for unreasonable delay of her asylum application. To state a claim of unreasonable delay under the APA, the Plaintiffs must allege that an agency "failed to take a discrete agency action that it is required to take and that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (cleaned up). In support of her claim, Plaintiff alleges not only that Plaintiff's application has been pending before USCIS for over 6 years without Defendants even scheduling

an initial interview, much less fully adjudicating the claim, but also that "Plaintiff's application [will not] ever be scheduled for an interview under the LIFO policy, because under Track 1 Defendants receive more applications per year than they complete on the merits and Defendants in practice dedicate only de minimus resources to reviewing cases out of the Track 2 backlog." [DE 28] at ¶ 31. Plaintiff further alleges that "[t]his delay is unreasonable in light of the fact that: (1) Plaintiff's interview will never be scheduled under current policies; and (2) the delay is 55 times the instructive deadlines set out by both Congress and DHS for performance of these duties." ¶ 32.

However, the Court finds that the allegations of the Amended Complaint fail to sufficiently allege that the delay was unreasonable[1] such that judicial intervention is appropriate. "Plaintiff's factual allegations are virtually indistinguishable from those cases where courts have routinely found that the LIFO policy constituted a valid rule of reason, and that the alleged delay was not so unreasonable as to amount to an APA violation." *See Machado v. U.S. Dep't of Homeland Sec.*, No. 25-CV-21846, 2026 WL 411696, at *4 (S.D. Fla. Feb. 13, 2026); *see e.g.*,

---

[1] Courts often look to the six-factor balancing test set forth in *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), to determine whether agency delay is reasonable or unreasonable. Although the Eleventh Circuit has not expressly adopted the TRAC factors, lower courts in this Circuit have found the TRAC factors applicable when confronted with unreasonable delay claims. *See e.g.*, *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1287 (S.D. Fla. 2023); *Nascimento v. United States Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1250 (S.D. Fla. 2023); *Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1353 (N.D. Ga. 2021). The TRAC factors are: (1) "the time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (quotations omitted). "In applying these factors, the Court is determining whether . . . Plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay." *Ghadami v. DHS*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *7 n.6 (D.D.C. Mar. 19, 2020).

*Marmol v. McHenry*, No. 25-CV-20499, 2025 WL 1865120, at *3 (S.D. Fla. July 7, 2025) ("Courts routinely hold that LIFO "is a rule of reason that satisfies the first TRAC factor.") (*citing Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1317 (S.D. Fla. 2023) (collecting cases)). With regard to Plaintiff's allegations in the Amended Complaint that it is mathematically provable that Defendants will never adjudicate her asylum application under current Track 1 and Track 2 policies, the Court agrees with Judge Bloom's reasoning[2] in a recent opinion rejecting those allegations under a plausibility standard:

> The first track uses the LIFO priorities whereas the second track prioritizes FIFO to address the oldest pending cases. Id. USCIS has dedicated some of its asylum officers to assist in reducing the backlog on the second track permitting some of the oldest pending applications to be completed in chronological order.").
>
> Therefore, given that USCIS's current LIFO policy requires that certain agents be dedicated to addressing the backlog, the Court cannot accept Plaintiff's allegation that adjudication of her asylum petition is a "mathematical impossibility." Even if an outsized number of new applications come in compared to the number of daily interview slots available, the agents responsible for working on the backlog will eventually, albeit slowly, work through the oldest applications until they reach Plaintiff's application.

*Machado*, 2026 WL 411696, at *4. As for the remaining factual allegations in the Amended Complaint regarding alleged financial and emotional harm to Plaintiff as a result of her asylum application remaining pending, the Court finds that Plaintiff fails to allege any significant harms beyond those that are merely a part of the immigration process, particularly in light of the ability for asylum applicants to live and work in the United States while their asylum applications are pending. *See, e.g., Marmol v. McHenry*, No. 25-CV-20499, 2025 WL 1865120, at *4 (S.D. Fla. July 7, 2025) ("While the seven-year delay in adjudication of Plaintiff's Form I-589 is

[2] While Judge Bloom relied on taking judicial notice of a document retrieved from a USCIS website explaining the two track system in reviewing asylum applications, *see Machado*, 2026 WL 411696, at *4, it is unnecessary for the Court to do that here because the two-track system was adequately alleged in the factual allegations of the Amended Complaint. *See* [DE 28] at ¶¶ 17-19.

undoubtedly frustrating, Plaintiff has not alleged any concrete harms beyond those "inherent in the immigration process."). The Court accordingly dismisses Plaintiff's APA claim.

## IV. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [DE 31] is **GRANTED**;
2. The Amended Complaint [DE 28] is **DISMISSED**;
3. The Clerk shall **CLOSE** this case and **DENY AS MOOT** any pending motions.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of July, 2026.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:

Counsel of record